**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| ARNULFO SERRATO GUILLEN, | ) | No. ED CV 14-1371-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 16, 2014, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on August 18, 2014, and August 28, 2014. Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 8, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/
/

## II.

## **BACKGROUND**

Plaintiff was born on August 12, 1965. [Administrative Record ("AR") at 27, 181.] He has past relevant work experience as a drywall stocker. [AR at 27, 47-48.]

On March 7, 2011, plaintiff filed an application for a period of disability and DIB, alleging that he has been unable to work since June 15, 2010. [AR at 20, 181.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 20, 89.] A hearing was held on February 4, 2013,[1] at which time plaintiff appeared represented by an attorney, and testified on his own behalf with the assistance of a Spanish language interpreter. [AR at 34-52.] A vocational expert ("VE") also testified. [AR at 47-51.] On February 19, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from June 15, 2010, the alleged onset date, through February 19, 2013, the date of the decision. [AR at 20-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 13.] When the Appeals Council denied plaintiff's request for review on May 1, 2014 [AR at 1-7], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it

---

[1] A hearing was held on October 31, 2012, but because a Spanish-language interpreter, which had been requested by plaintiff, had not been ordered by the Agency, the hearing was continued. [Supp'l AR at 519.]

2

is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.  THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since June 15, 2010, the alleged onset date.[2] [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairment of degenerative disc disease. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [AR at 23.] The ALJ further found that plaintiff

---

[2] The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015. [AR at 22.]

4

retained the residual functional capacity ("RFC")[3] to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] as follows:

> [T]he claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday with regular breaks in 30 minute increments; he has no restrictions with regard to sitting; and he is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying. The claimant is precluded from climbing ladders, ropes, and scaffolds; working at unprotected heights; and around vibrating machinery and tools.

[Id.] At step four, based on plaintiff's RFC, the ALJ concluded that plaintiff is unable to perform any of his past relevant work as a drywall stocker. [AR at 27, 49.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "electronics worker" (Dictionary of Occupational Titles ("DOT") No. 726.687-010), "garment sorter" (DOT No. 222.687-014), and "production solderer" (DOT No. 813.684-022). [AR at 28, 49.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of June 15, 2010, through February 19, 2013, the date of the decision. [AR at 28.]

## V.
## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) determined that plaintiff could perform work at step five; (2) rejected the opinion of plaintiff's treating physician; and (3) rejected plaintiff's

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b).

subjective symptom testimony.  [Joint Stipulation ("JS") at 3-4.]

As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

## A.     STEP FIVE DETERMINATION

The ALJ determined that plaintiff is "not able to communicate in English, and is considered in the same way as an individual who is illiterate in English."  [AR at 27.]  The ALJ then determined, at step five, that plaintiff could perform the alternative positions of electronics worker, garment sorter, or production solderer.  [AR at 28.]  Plaintiff contends that the DOT language requirements for the three positions the ALJ found he could perform are inconsistent with plaintiff's assessed English language illiteracy.  [JS at 6-7.]  The Court agrees.

At step five, the ALJ considered plaintiff's age, education, work experience, and RFC in determining whether there were jobs existing in significant numbers in the economy that plaintiff could perform.  [AR at 27-28.]  A claimant's educational level is a consideration under the regulations and means, among other things, "formal schooling or other training which contributes to [a claimant's] ability to meet vocational requirements," and "how well [a claimant is] able to communicate in English since this ability is often acquired or improved by education."  20 C.F.R. § 404.1564(a), (b).  In evaluating a claimant's educational level, the regulations use categories that include "[i]lliteracy" and "[i]nability to communicate in English."  Id. § 404.1564(b)(1), (5).  A claimant is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name."  Id. § 404.1564(b)(1).  With regard to a claimant's ability to communicate in English, the regulations provide, in relevant part:

> Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language.  Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do.  It generally doesn't matter what other language a person may be fluent in.

Id. § 404.1564(b)(5).

The subject occupations listed in the DOT all include a General Educational Development

("GED") component, which describes the general educational requirements of each particular job. DOT, App'x C -- *Components of the Definition Trailer*, 1991 WL 688702 (1991). There are five defined GED levels for language development (level one has the least language skills requirements and level five has the most). Since no jobs under the DOT have a GED level lower than level one for language development, <u>all</u> jobs described in the DOT have English reading, writing, and speaking requirements. As relevant here, the occupations of electronics worker and production solderer, both with a language development level of two, require the following:

> Language: Level 2 - READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end puncuation [sic], and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct puncuation [sic], variations in word order, using present, perfect, and future tenses.

DOT Nos. 726.687-010, 813.684-022. The occupation of garment sorter, at language development level one, requires the following:

> Language: Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
> WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
>
> SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

DOT No. 222.687-014.

Where there is an inconsistency between the VE's testimony regarding the requirements of a job and the DOT description of how the job is performed, there must be persuasive evidence to support the inconsistency. See <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 793 (9th Cir. 1997). Moreover, it is the ALJ's affirmative responsibility to ask about any possible conflicts between the

VE's testimony and the DOT. See Soc. Sec. Ruling[5] 00-4p ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflicts between the VE . . . evidence and the information provided in the DOT.") (emphasis added). "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a [VE's] testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi, 486 F.3d at 1152.

At the hearing on February 4, 2013, plaintiff testified through a Spanish language interpreter.[6] [AR at 36.] Prior to the VE's testimony, the ALJ asked her to "[p]lease make sure your testimony is consistent with the [DOT]. If you disagree with the DOT, please let me know." [AR at 47.] He did not otherwise ask the VE whether her testimony was consistent with the DOT, and the VE never stated that she disagreed with the DOT. [See generally AR at 47-51.] After plaintiff's testimony, the ALJ posed the following hypothetical to the VE:

> Assuming a 47-year old individual . . . [w]ith a ninth grade education in Mexico,[7] that has only done that job as a drywall stocker. The individual can do a range of light work, with 20 pounds occasionally, 10 pounds frequently; can sit and stand or can -- let's do stand and walk first -- up to 6 hours in an 8-hour day, in 30-minute increments; no restrictions on sitting; no other restrictions except should not climb ladders, ropes, or scaffolds; should not work at unprotected heights or around any vibrating machinery or tools.

[AR at 48-49.] The ALJ's hypothetical did not include any information regarding plaintiff's lack of literacy in the English language. [AR at 49.] Given plaintiff's assessed illiteracy [AR at 27], it appears, therefore, that plaintiff's capabilities are inconsistent with the DOT language requirements for the three occupations suggested by the VE, and the deviation was not explained.

Defendant argues that plaintiff's contention that he could not perform even the level one

---

[5] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[6] There also is evidence in the record that plaintiff required an interpreter at medical appointments. [See, e.g., AR at 323, 374.]

[7] Plaintiff actually testified that he had completed nine years of *schooling* in Mexico, not that he had completed the ninth *grade*. [AR at 48.]

8

language skill position of garment sorter, "which is the lowest possible language skill requirement in the DOT," is essentially an assertion that plaintiff is "*per se* disabled under the DOT because of his inability to communicate in English." [JS at 7-8 (citations omitted).] However, as implicitly found by the ALJ [AR at 27 (citation omitted)], a person's inability to read or write in English is considered the functional equivalent of illiteracy within the meaning of the Social Security Administration, even if that person may be literate in another language. See Pinto v. Massanari, 249 F.3d 840, 846 n.4 (9th Cir. 2001); Chavez v. Dep't of Health and Human Servs., 103 F.3d 849, 852-53 (9th Cir. 1996). While an illiterate person is not per se disabled, Pinto, 249 F.3d at 847, an ALJ must consider how a person's literacy level affects work-related functions -- such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision -- when determining whether a person has the RFC to perform other jobs in the national economy at step five in the sequential evaluation process. Pinto, 249 F.3d at 846 n.5. If the ALJ relies on a job description in the DOT that fails to comport with a claimant's language limitations, as happened here, the deviation must be explained. Id. at 847. It is insufficient for the ALJ to simply state that the VE's testimony was consistent with the DOT [see, e.g., AR at 28] when the record contains no persuasive evidence to support this assertion. See Pinto, 249 F.3d at 846-47.

Defendant also argues that any error was harmless given the fact that plaintiff's past relevant work as a drywall stocker required level three language development under the DOT. [JS at 8-9 (citing DOT No. 842.361-030).] Even assuming that DOT No. 842.361-030 is the accurate DOT number for plaintiff's past relevant work,[8] the Court may not affirm the ALJ's nondisability determination on this ground, because the ALJ did not invoke this ground in his decision. See Pinto, 249 F.3d at 846-47.

Based on the foregoing, the ALJ did not present a complete hypothetical to the VE, nor did

---

[8] The VE testified that plaintiff's past relevant work as a drywall stocker could be found at DOT No. 842.361-*038* [AR at 48], yet that DOT job description number does not appear to exist. Defendant contends, without authority, that the closest DOT position is that of drywall applicator, which has a reasoning level of three. DOT No. 842.361-030.

9

he fulfill his affirmative duty to clarify the VE's testimony by asking if her testimony conflicted with the DOT. Moreover, neither the VE nor the ALJ pointed to any unambiguous evidence to support the potential departure from the DOT. As such, the VE's testimony could not serve as substantial evidence supporting the ALJ's determination and it was error for the ALJ to rely on the VE's testimony in finding that plaintiff, in light of his assessed illiteracy in English, can perform the jobs of electronics worker, garment sorter, or production solderer. Accordingly, remand is warranted on this issue. See Light, 119 F.3d at 792 (remand warranted where "[n]either the ALJ nor the [VE] explained the reason for departing from the DOT").

**B.    MEDICAL OPINIONS AND PLAINTIFF'S SUBJECTIVE SYMPTOM STATEMENTS**

Plaintiff also contends that the ALJ failed to properly evaluate the record with regard to the issue of whether plaintiff's "non-industrial rheumatological disorder is a severe impairment." [JS at 12.] Specifically, he contends that the ALJ failed to include this as a severe impairment because he gave significant weight to the September 22, 2011, opinion of the state agency reviewing consultant, Dr. Laiken [AR at 65-74], who did not review any exhibits after that date, many of which discuss a diagnosis of severe rheumatologic disorder. [JS at 13 (citing AR at 70, 423-516).] Plaintiff also notes that Dr. Laiken rendered his opinion a year before the consultative examiner, Dr. Bernabe, examined plaintiff.[9] [Id.] Plaintiff notes that the record contains a "multitude of orthopedic findings combined with the rheumatological condition," including evidence later submitted to the Appeals Council. [AR at 13-14 (citing AR at 458-73, 506-16).] On remand, the ALJ shall reconsider the entirety of the medical evidence of record, and determine whether plaintiff's rheumatological disorder is a severe impairment. Additionally, because the ALJ's reconsideration of the effect of plaintiff's illiteracy on his RFC and reconsideration of the medical evidence documenting plaintiff's alleged rheumatological disorder may also impact on the ALJ's evaluation of plaintiff's credibility, plaintiff's subjective symptom complaints shall also be

---

[9] The ALJ gave little weight to Dr. Bernabe "who opined the claimant had the [RFC] for a range of medium work in one report and heavy work in another report . . . because he failed to adequately consider the claimant's subjective allegations . . . ." [AR at 26 (citing AR at 443-56).]

reconsidered on remand.

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall review all of the medical evidence of record and determine whether plaintiff's rheumatological disorder is a severe impairment.[10] In assessing the medical opinion evidence of record, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit his testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Finally, the ALJ shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, and taking into

---

[10] The Court expresses no opinion on the merits of this issue.

11

consideration plaintiff's illiteracy,[11] whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[12]

### VII.
### CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 12, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[11] Nothing herein is intended to disrupt the ALJ's finding that plaintiff is illiterate.

[12] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to his past relevant work.